IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

GABRIELLE BARGOOT,

    Plaintiff,

v.

THE SCHOOL DISTRICT OF PALM BEACH COUNTY,

    Defendant,

CASE NO.

*Plaintiff Demands a Trial by Jury*

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Gabrielle Bargoot (hereinafter referred to as "**Plaintiff**" and/or "**Bargoot**"), by and through her counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant the School District of Palm Beach County (hereinafter referred to as "**Defendant**" and/or "**PBC**"), and alleges as follows:

## INTRODUCTION

1. This employment discrimination case is about an employer who subjected its disabled employee to relentless harassment, discrimination and retaliation to force the employee's unlawful termination in favor of employing what they incorrectly believed to be more able-bodied employees.

2. Plaintiff Bargoot brings this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. as amended ("**ADAAA**") and 42 U.S.C. § 1983 ("**§1983**") to redress the deprivation of Plaintiff's rights, privileges and immunities secured by the laws and Constitution of the United States.

3. Ms. Bargoot seeks monetary relief to redress Defendant's unlawful employment practices in violation of both the ADAAA and the 1983. Additionally, this action seeks to redress Defendant's deprivation of Ms. Bargoot's personal dignity and her civil right to pursue equal employment opportunities.

4. Ms. Bargoot found herself at the center of a hostile work environment as part of a scheme orchestrated by the Defendant to unlawfully terminate Ms. Bargoot.

5. Defendant's false and misconceived notations of Ms. Bargoot's physical capabilities and faculties wholly guided their unlawful decision and treatment of Ms. Bargoot. Rather, Defendant's unrelenting discrimination against Plaintiff culminated with her unlawful termination.

6. At bottom, Defendant is liable for subjecting Ms. Bargoot to a work environment infested with relentless disability discrimination and for wrongfully terminating Plaintiff because of her disability.

## PARTIES

7. At all material times, Plaintiff Gabrielle Bargoot (hereinafter referred to as "Plaintiff" or "Bargoot") is a disabled female.

8. Plaintiff Bargoot was and still is an individual female residing in Palm Beach County, Florida.

9. At all material times, Defendant the School District of Palm Beach County (hereinafter referred to as "Defendant" and/or "PBC") was and still is a Florida governmental body duly existing and established by the virtue and laws of the State of Florida with offices in Palm Beach County, Florida.

10. Defendant PBC is a "person" within the meaning of 42 U.S.C. §2000e(a) and 42 U.S.C. § 1983, and an "employer" within the meaning of 42 U.S.C. §2000e(b).

11. At all relevant times, Defendant has been continuously doing business in the State of Florida and have continuously held at least 15 employees throughout all relevant calendar years. 42 U.S.C. § 12111(5)(A).

12. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 101(5) of the ADA, 42 U.S.C. § 12115(5) and Section 107(7) of the ADA, 42 U.S.C. § 12117.

13. Defendant is and has been a covered entity under Section 102(2) of the ADA, 42 U.S.C. § 12111(2).

## JURISDICTION AND VENUE

14. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(A), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1).

15. Plaintiff is expressly authorized to bring this action by Section 107(a) of the ADA. Plaintiff has an implied cause of action to bring this suit under § 1983.

16. Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Jacksonville Division. Defendants were located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Fernandina Beach, Florida, located in Nassau County, Florida.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff Bargoot has complied with all statutory prerequisites to file this action.

18. On or about May 29, 2020, Plaintiff dual-filed his charge for discrimination with the Equal Employment Opportunity Commission ("**EEOC**") and the Florida Commission on Human Relations ("**FCHR**") against Defendant alleging the facts as set forth herein.

19. In accordance with and pursuant to the existing workshare agreement between the two agencies, an FCHR filing automatically operates as a dual EEOC filing.

20. On or about February 8, 2021, the EEOC issued Plaintiff a Right to Sue Letter.

21. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

22. This action is being commenced more than (180) days since the inception of Plaintiff's administrative action against the Defendant.

## STATEMENT OF MATERIAL FACTS

23. In or around the spring of 2019, Defendant PCB hired Plaintiff as a "Math Teacher" for gifted or exceptional students in the sixth grade. Defendant PCB assigned Plaintiff to serve in such roll at "Congress Middle School." Plaintiff officially began her employment in August 2019.

24. At all times material, Plaintiff graduated Summa Cum Laude with her bachelor's degree from Florida Atlantic University. Plaintiff subsequently went on to earn her master's degree from Boston University in Education with a concentration in Applied Human Development with a grade point average of 3.8.

25. Furthermore, at all times material, Plaintiff held multiple certifications in the field of education as well as two years of teaching experience upon beginning employment with Defendant.

26. Throughout the course of her employment, Plaintiff suffered from Dysautonomia. Dysautonomia is an illness of the autonomic Nervous System, or the nerves that regulate nonvoluntary bodily functions such as heartbeat, breathing, and digestion.

27. Symptoms commonly associated with Dysautonomia include but are not limited to dizziness, fainting, difficulty with balance, noise/light sensitivity, chest pain/discomfort, uncontrolled body temperature, uncontrolled tiredness, nauseous and vomiting. These symptoms can be periodic or present as a constant.

28. On or about September 6, 2019, Plaintiff fainted during work and was taken to the emergency room. Prior to this incident, Plaintiff had fainted several other times while on campus.

29. In or around October or November of 2019, Plaintiff's mother called and discussed Plaintiff's condition with Defendant's Assistant Principal zitner. Plaintiff's mother explained that Plaintiff needed to take certain steps in order to care for her health but that it would not hinder her ability to do her job.

30. On or about November 11, 2019, during a Professional Development Day event, Plaintiff fainted again.

31. After coming to, Plaintiff was confronted by Defendant's employee DENISE O'CONNOR ("O'CONNOR"), who told Plaintiff that they needed to have a meeting to discuss "what to do about these incidents" (referring to Plaintiff's fainting caused by her disability).

32. Despite insisting such was necessary, O'CONNOR refused to actually schedule a meeting with Plaintiff to discuss her disability and her having fainted while at work. As a result of O'CONNOR's inaction, the meeting was never arranged.

33. In or around November of 2019, Plaintiff requested reasonable accommodations from Defendant for her disability.

34. At all times material, these requests included teaching from a seated position, exemption from fire drills and an avoidance of areas that may be too loud (including taking her class to lunch a little early so that she would not be there while everyone else is and not participating in the rotating shifts of lunch duties and instead performing a different task that was also part of the rotating shifts.) Plaintiff was unsuccessful in her attempts to send in the recommendations provided by her physician due to a faulty FAX machine.

35. On or about December 2, 2019, Plaintiff successfully faxed her requests for reasonable accommodations to Defendant.

36. On or around that same day, Plaintiff was struck in the head accidentally by a student's iPad and, as a result, was knocked unconscious and suffered a concussion as well as temporary memory loss.

37. Plaintiff's injuries required emergency medical attention, and Plaintiff was taken to the hospital via ambulance.

38. At all times material, while Plaintiff was healing from the concussion, her Dysautonomia symptoms intensified.

39. While recovering from her injuries, Plaintiff's mother, on Plaintiff's behalf, contacted Defendant's employees SHADRIKA TAYLOR ("TAYLOR") and KAREEM THOMPSON ("THOMPSON") to discuss Plaintiff's condition and the injuries sustained that resulting in Plaintiff's emergency room visit. Plaintiff's mother also assured O'CONNOR would be update on Plaintiff's condition. Plaintiff's mother further requested an incident report for the injuries which occurred during school hours that required medical attention from THOMPSON.

40. THOMPSON assured Plaintiff's mother that he would inform O'CONNOR of the incident and that he would provide Plaintiff with an emailed statement detailing the incident.

41. On or about December 3, 2019 Plaintiff was scheduled for an evaluation with O'CONNOR. When Plaintiff arrived at O'CONNOR's office, a "Do Not Disturb" sign was placed on the door. As a result, Plaintiff attempted to reschedule her evaluation.

42. Upon rescheduling, Plaintiff was provided her first formal evaluation. Defendant's employees, in retaliation for Plaintiff's request for accommodation provided Plaintiff an uncharacteristically low score, far worse than any of her previous evaluations.

43. On or about December 5, 2019, a post evaluation meeting was scheduled with O'CONNOR, which was standard practice following providing employees with their respective evaluation.

44. As a result of Defendant's refusal to implement Plaintiff's requested accommodation, Plaintiff again fainted while at work. As a result, Plaintiff was unable to attend the post-evaluation meeting which was subsequently rescheduled for December 6, 2020.

45. On or around December 11, 2020, Defendant wrongfully and unlawfully terminated Plaintiff because of her disability, and 6n retaliation for her objections to Defendant's unlawful discriminatory practices.

46. At all relevant times, Plaintiff was and continued to be qualified for the position she held and for the various positions she maintained with Defendant.

47. The aforementioned allegations are just some of the examples of the discrimination and retaliation Ms. Bargoot suffered at the hands of the Defendant and are not an exhaustive list of Plaintiff's experiences of discrimination and harassment while employed with Defendant.

48. Plaintiff believes she has been discriminated and retaliated against in violation of the ADAAA.

49. Additionally, Ms. Bargoot further claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine. Defendant has exhibited a pattern and practice of unlawful discriminatory conduct.

50. As a result of the acts and conduct complained of, Ms. Bargoot has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails. Ms. Bargoot also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

51. Ms. Bargoot suffers from increased stress and anxiety. Similarly, Ms. Bargoot has trouble sleeping as a result of Defendants' unlawful conduct.

52. Further, as a result of Defendant's unlawful employment practices, Ms. Bargoot felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

53. As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Ms. Bargoot seeks punitive damages against Defendant. Ms. Bargoot has presented factual allegations that would permit any reasonable jury to award damages.

54. At bottom, Defendant is liable for their reckless disregard for Ms. Bargoot's personal dignity and her civil right to pursue equal employment opportunity.

55. Ms. Bargoot has suffered damages as a result of Defendant's unlawful employment practices.

## COUNT ONE
### 42 U.S.C. § 1983
### Fourteenth Amendment Equal Protection Clause
### Disability Discrimination

56. Plaintiff reincorporates the allegations in the previous paragraphs.

57. Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

58. Under the Equal Protection Clause, individuals have a constitutional right to be free from unlawful discriminatory harassment in public employment.

59. A plaintiff may establish municipal liability by showing the municipality itself causes the constitutional violation at issue.

60. A plaintiff may establish entity liability by showing an unofficial custom or practice of the Defendant shown through repeated acts or decision of a municipal official with final policy-making authority.

61. Municipal liability attaches under § 1983 where a deliberate choice to follow a course of action is made from among various alternatives.

62. Pursuant to state law, both THOMPSON and O'CONNOR are municipal officials with final policymaking authority.

63. THOMPSON and O'CONNOR acted under the color of state law to deliberately deprive Plaintiff of her rights, privileges and immunities secured by the Fourteenth Amendment to the U.S. Constitution and laws of the United States.

64. At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Ms. Bargoot in the terms and conditions of her employment because of her disability, and Defendant did unlawfully discriminate against Ms. Bargoot in the terms and privileges of her employment because of her disability in violation of the 1983.

65. The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of the 1983. In subjecting Plaintiff

to adverse employment action on the basis of her disability, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

66. Ms. Bargoot was subject to unwelcome discriminatory conduct during the latter term of her employment with Defendant and this conduct was directed to and perpetuated upon Plaintiff because of her disability.

67. As a result of her disability, Defendant subjected and permitted its employees to expose Plaintiff to discrimination and unlawful discharge.

68. Defendant was notified about and was otherwise aware of the discriminatory conduct and policies directed at Ms. Bargoot by Defendant's employees/management and failed to take appropriate corrective action.

69. Defendant violated the 1983by unlawfully discharging and discriminating against Plaintiff based her disability, of which the Defendant was fully aware.

70. As a direct and proximate result of Defendants' intentional discriminatory conduct in violation of the 1983, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

71. Plaintiff further requests attorney's fees and costs be awarded as permitted by law.

72. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the 1983, warranting the imposition of punitive damages in addition to compensatory damages.

73. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under the 1983.

74. As a direct and proximate result of the unlawful discrimination facilitated by Defendant and deprivation of Plaintiff's equal protection rights, Plaintiff has suffered damages.

75. Defendants are liable for unlawful disability discrimination under the 1983.

## COUNT TWO
### *Cause of Action for Discrimination Under the ADAAA*
### *(Disparate Treatment)*

76. Plaintiff reincorporates the allegations in the previous paragraphs.

77. Title I of the ADA provides that employers shall not discriminate against qualified individuals on the basis of a disability. 42 U.S.C. § 12112(a).[1]

78. Plaintiff is a disabled individual under the law because she has a record of, and actually has, a disability diagnosis pursuant to the ADAAA. This disability affects multiple major life functions and major bodily functions including but not limited to performing manual tasks, lifting and manipulating objects, standing, sitting, bending, and overall function of his nervous system.

79. Plaintiff was otherwise qualified to perform the essential functions of her job with or without a reasonable accommodation.

80. After subjecting Plaintiff to unrelenting targeted discriminatory practices, Defendant orchestrated a scheme to terminate Plaintiff under the guise of legitimate circumstances.

81. Defendant knowingly and intentionally discriminated against Plaintiff by terminating her employment on the basis of his disability.

---

[1] The ADA defines a disability as a "physical or mental impairment" that "substantially limits" one or more "major life activities." 29 C.F.R. § 1630.2(g)(1).

82. Accordingly, Plaintiff's unlawful termination occurred under circumstances giving rise to an inference of discrimination.

83. As a result of Defendant unlawful and discriminatory conduct against Plaintiff in violation of 42 U.S.C. section 12112(a), Plaintiff has suffered damages.

84. As a direct and proximate result of Defendant intentional discriminatory conduct in violation of the ADAAA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

85. Plaintiff further requests attorney's fees and costs be awarded as permitted by law.

86. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADAAA, warranting the imposition of punitive damages in addition to compensatory damages.

87. The conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under the ADAAA.

88. As a direct and proximate result of the unlawful discrimination facilitated by Defendant, Plaintiff has suffered damages.

89. Defendant is liable for unlawful disability discrimination under the ADAAA.

### COUNT THREE
*Cause of Action for Discrimination Under the ADAAA*
*(Hostile Work Environment)*

90. Plaintiff reincorporates the allegations in the previous paragraphs.

91. Courts recognize disability-based hostile work environment claims under the ADA. *See, e.g.*, *Phillips v. Harbor Venice Mgmt., LLC*, No. 8:19-CV-2379-T-33TGW, *1, *3, 2020 WL 2735201 (M.D. Fla. May 26, 2020) ("the Court will assume that a disability-based hostile work environment claim is actionable under the ADA."); *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1366 (S.D. Fla. 1999) (same).

92. Plaintiff was subjected to unwelcome harassment based on her actual and/or perceived disability. Defendant, by and through its representatives, berated, humiliated, and demeaned Plaintiff on a regular basis because of her disability.

93. Plaintiff complained to Defendant regarding the discriminatory animus to no avail.

94. This conduct was undoubtedly sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment. Accordingly, Defendant subjected Plaintiff to a hostile work environment because of her disability.

95. As a direct and proximate cause of the discrimination facilitated by Defendant, Plaintiff has suffered damages.

96. Defendant is liable for unlawful disability discrimination under the ADAAA.

## COUNT FOUR
*Retaliation in Violation of the ADA 42 U.S.C. § 12203(a)*

97. Plaintiff reincorporates the allegations in the previous paragraphs.

98. The ADA prohibits employment discrimination against an individual for opposing or complaining about unlawful disability discrimination. 42 U.S.C. § 12203(a).

99. Plaintiff opposed Defendant's discriminatory treatment by reporting the unlawful conduct to Defendant directly and again through counsel.

100. Following Plaintiff's opposition to the discriminatory harassment and actions against Plaintiff, the discrimination and hostility increased dramatically. Defendant began to impose unrealistic restriction upon Plaintiff.

101. Ultimately, Defendant unlawfully terminated Plaintiff in retaliation for her complaints of discrimination and request for accommodation.

102. Defendant is strictly and/or vicariously liable for retaliating against Plaintiff for complaining about unlawful disability discrimination.

103. As a result of Defendant unlawful employment practices in violation of the ADA, Plaintiff has suffered damages.

### COUNT FIVE
*Disability Discrimination (Failure to Accommodate)*
*in Violation of the ADA 42 U.S.C. § 12112(a)*

104. Plaintiff reincorporates the allegations in the previous paragraphs.

105. Title I of the ADA provides that employers shall not discriminate against qualified individuals on the basis of a disability. 42 U.S.C. § 12112(a).[2]

106. The ADA obligates employers to provide reasonable accommodations to a qualified disabled individual. 42 U.S.C. § 12112(b)(5)(A)). Qualified individuals are those who can perform the essential functions of their jobs with or without reasonable accommodations.

107. Plaintiff is a disabled individual because she has a record of, and actually has, disability. This disability affects multiple major life functions and major bodily functions including but not limited to performing manual tasks, lifting and manipulating objects, standing, sitting, bending, and overall function of his nervous system.

---

[2] The ADA defines a disability as a "physical or mental impairment" that "substantially limits" one or more "major life activities." 29 C.F.R. § 1630.2(g)(1).

108. Plaintiff is a qualified individual because Plaintiff was fully capable of performing the essential functions of his job with the aforementioned accommodations.

109. Plaintiff requested an accommodation which Defendant denied and/or failed to enforce.

110. Defendant is strictly and/or vicariously liable for discriminating against Plaintiff on the basis of his disability.

111. As a result of Defendants' failure to accommodate Plaintiff in violation of 42 U.S.C. section 12112(a), Plaintiff has suffered damages.

## DEMAND FOR JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of both the ADEA and 1983.

Dated:  Miami, Florida
        May 10, 2021

**DEREK SMITH LAW GROUP, PLLC**

_____
Caroline H. Miller, Esq.
701 Brickell Ave, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
Caroline@dereksmithlaw.com

*Counsel for Plaintiff*